UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JPMORGAN CHASE BANK, NATIONAL ASSOCIATION,<br><br>Plaintiff,<br><br>v.<br><br>VINCENT ROGGIO,<br><br>Defendant. | Civil Action No. 3:19-cv-06330-FLW-ZNQ<br><br>**MEMORANDUM ORDER** |

**THIS MATTER** having been opened to the Court by *pro se* Plaintiff Vincent Roggio, on a Motion for Reconsideration pursuant to Fed. R. Civ. P. 60, *see* ECF No. 61, a "Motion for the Court to Enforce its Order addressing the Rule of Law," *see* ECF No. 62, a Motion for Recusal, *see* ECF No. 71, and a "Motion to file an Amended Motion for Summary Judgment," *see* ECF No. 79; it appearing that Defendant JPMorgan Chase Bank, National Association, through counsel Brian Peter Scibetta and Ricard P. Haber, Esqs., opposes the first three motions, *see* ECF Nos. 63-64, 73, and has not yet responded to the fourth; it appearing that the Court having considered the parties' submissions in connection with Roggio's motions pursuant to Fed. R. Civ. P. 78; the Court **DENIES** the pending motions and makes the following findings:

(1) Although the procedural history in this case is tortured, given that Roggio has filed *thirteen* motions to date, the facts are relatively straightforward.[1] Chase owns a note on which Roggio is liable. *See* Compl., ¶¶ 7, 10. On September 25, 2008, Chase acquired the note when it purchased certain assets and liabilities from Washington

---

[1] This recitation of facts is drawn from the Court's various prior Orders.

Mutual Bank ("WaMu"), then insolvent and under receivership with the Federal Deposit Insurance Corporation ("FDIC"). *See* ECF No. 17, at 2.

(2)   WaMu and Roggio originally executed the note on April 25, 2005, with Roggio's house as collateral. *Id.* Roggio stopped making payments on February 1, 2006. *Id.* WaMu filed for foreclosure on June 21, 2006, in New Jersey Superior Court, Chancery Division, Monmouth County. *See Washington Mutual Bank f/k/a Washington Mutual Bank, FA v. Vincent Roggio, et al.*, No. F-10850-06. After a decade of litigation,[2] the state court entered judgment for Chase (as WaMu's successor in interest) for $6,169,701.07. *Id.* at 3. Chase then bought Roggio's house at a foreclosure sale a year later for $1,000. *Id.*

(3)   On February 20, 2019, Chase initiated the instant action against Roggio seeking a deficiency judgment for the balance he owes on the note: $6,327,508.50, minus a "fair market" credit equivalent to the price of the house whenever Chase sells it. *Id.* at 3 n.3. Roggio moved to dismiss on April 30, 2019, arguing that the Court lacked subject matter jurisdiction under the Financial Institutions Reform and Recovery Enforcement Act ("FIRREA"). *See* ECF No. 8. FIRREA establishes procedures for adjudicating claims against a failed bank such as WaMu. One provision requires a claimant to exhaust administrative remedies before suing in federal court. Another provides that venue is appropriate only "in the district . . . within which the deposit institution's principal place of business is located or the . . . District of Columbia." 12 U.S.C. 1821(d)(6)(A). Roggio has a case against the FDIC under this statute in

---

[2]   Although WaMu remained the named plaintiff in the foreclosure action, Chase controlled prosecution after acquiring Roggio's note, consistent with New Jersey Ct. R. 4:34-3. Roggio has long insisted that this was improper because it "left no party on one side of the case."

(4) the proper forum. *See Roggio v. Fed. Deposit Ins. Corp.*, 2018 WL 7141320, at *2 (D.D.C. Aug. 17, 2018).

(4) Because the purpose of FIRREA is "to force plaintiffs with claims *against* failed deposit institutions to file their claims under FIRREA's administrative claims procedures before filing them in federal court [limited, in turn, by the venue restrictions]," *Hudson United Bank v. Chase Manhattan Bank of Connecticut, N.A.*, 43 F.3d 843, 849 (3d Cir. 1994) (emphasis added), and because Roggio sought to "turn this statutory scheme on its head" by subjecting actions brought *by* a bank to FIRREA's exhaustion and venue requirements, I denied his dismissal motion. *See* ECF No. 17, at 5-6. I subsequently rejected Roggio's Motion for Reconsideration, and Motion for a Preliminary Injunction/Restraining Order. *See* ECF No. 32, at 4-5. Roggio further filed a "Motion for an Evidentiary Hearing" and a "Motion to Vacate the State Court's Judgments," *see* ECF Nos. 34-35, which the Magistrate Judge summarily denied. *See* ECF No. 47.

(5) On April 17, 2020, Roggio submitted his Answer. *See* ECF No. 29. He also asserted four counterclaims: WaMu breached (1) a 2007 Settlement Agreement ("SA") and (2) the implied covenant of good faith and fair dealing, while (3) tortiously interfering with prospective economic advantage by impairing Roggio's credit and (4) violating the New Jersey Consumer Fraud Act ("NJFCA") by misrepresenting facts during the course of the foreclosure action. *See* ECF No. 29. Chase moved to dismiss these claims on June 3, 2020. *See* ECF No. 37. I granted that motion under FIRREA. *See* ECF No. 57, at 3-4. While my decision was pending, Roggio filed a "Motion for the Court to take Judicial Notice of Adjudicative facts," *see* ECF No. 46, as well as a

summary judgment motion, *see* ECF No. 51, which I rejected as premature. *See* ECF No. 52.

(6) On December 28, 2020, because of the volume and frivolity of Roggio's submissions to the Court, the Magistrate Judge entered an Order requiring Roggio to "seek express permission . . . before filing any future motions," *see* ECF No. 66, but not before Roggio moved to reconsider my Order dated November 19, 2020, *see* ECF No. 61, and "to Enforce [the] [November 25, 2019] Order addressing the Rule of Law." *See* ECF No. 62. Then, subsequent to the Magistrate Judge's Order, and seemingly undeterred by the requirement that he must obtain advance permission, Roggio moved to recuse me. *See* ECF No. 71. Finally, this week, Roggio asked for leave to "file an Amended Motion for Summary Judgment." *See* ECF no. 79. All motions are pending. I address each in turn.

(7) <u>Roggio's Rule 60(b) Motion</u>. Roggio asks the Court to reconsider its Order dated November 20, 2020, dismissing his counterclaims with prejudice. *See supra*. To succeed on a motion for reconsideration, Roggio must demonstrate: "(1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct [a] clear error of law or prevent manifest injustice." *Lazaridis v. Wehmer*, 591 F.3d 666, 669 (3d Cir. 2010). He may not use the motion merely to "restate arguments that the court has already considered." *Lawrence v. Emigrant Mortg. Co.*, 2012 WL 5199228, *2 (D.N.J., Oct. 18, 2012). Nor may he use it "to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." *NL Indus., Inc. v. Comm. Union Ins. Co.*, 935 F. Supp. 513, 516 (D.N.J. 1996). If he disagrees with the Court's decisions, he should

challenge them through the normal appellate process. *Dubler v. Hangsterfer's Laboratories*, 2012 WL 1332569, *2 (D.N.J., Apr. 17, 2012) (citing *Bowers v. Nat'l Collegiate Athletic Ass'n*, 130 F. Supp. 2d 610, 612 (D.N.J. 2001)); *G-69 v. Degnan*, 748 F. Supp. 274, 275 (D.N.J. 1990) ("The only proper ground for granting a motion for reconsideration, therefore, is that the matters or decisions overlooked, if considered by the court, might reasonably have altered the result reached."). "[R]econsideration is an extraordinary remedy, that is granted very sparingly." *Brackett v. Ashcroft*, 2003 WL 22303078, at *2 (D.N.J. Oct. 7, 2003).

(8) Roggio wholly fails to justify reconsideration here. The crux of his motion, like his counterclaims, is that WaMu breached the 2007 SA, should not have been allowed to pursue foreclosure, and committed various irregularities during that process. *See, e.g.*, ECF No. 61, at 29. As I stated in my Order, because these claims involve conduct by a bank now in receivership, and have nothing to do with Chase's post-acquisition actions, they are encompassed by FIRREA (and I am barred from hearing it to that extent). Nothing in Roggio's motion leads me to revisit my conclusion. To the contrary, Roggio cites law that belies *his own* point. *See, e.g.*, *Benson v. JPMorgan Chase Bank, N.A.*, 673 F.3d 1207, 1216 (3d Cir. 2012) (holding that only "a claim based on *JPMorgan's own acts* could not be resolved by the FDIC," and that "claims based on a purchasing bank's *post-purchase actions* . . . are not governed by FIRREA") (emphasis added). Perhaps recognizing this, Roggio devotes countless pages to rehasing his argument that this Court lacks jurisdiction to hear Chase's deficiency claim in the first place. *See* ECF No. 61, at 1, 23. But I have already—and

repeatedly—rejected that argument. *See* ECF Nos. 17, 31. FIRREA applies to claims *against* a defunct bank, not claims *by* a bank (or its successor in interest).

(9) Roggio also asserts that Chase "had no standing in the state case" for reasons that continue to remain unclear, but seem to involve "Chase masquerade[ing] as an unnamed party" in the foreclosure action and/or "not hold[ing] in due course" the relevant "notes" and "negotiable instruments," which were "nullities and had no legal force" under the Uniform Commercial Code ("UCC"). *See, e.g.*, ECF No. 61, at 2, 13-15, 22. Whatever the merits of this claim, Roggio's recourse is in state court, not here, as I have long emphasized. *See* ECF No. 32, at 4; *accord Roggio v. Fed. Deposit Ins. Corp.*, No. 09-1733, 2018 WL 7141320, at *2 (D.D.C. Aug. 17, 2018) (concluding same). Roggio finally argues—vaguely, and for the first time—that my dismissal Order violates due process. *See* ECF No. 61, at 10. At bottom, this claim, too, centers on "Chase's lack of standing in the state court or the void judgment on which the deficiency action is based," *id.* at 11, and on Roggio's baseless assertion that I "hav[e] never addressed [these issues]." *Id.* at 13. Setting aside the fact that I clearly previously address them, *see supra*, this case does not implicate due process in any event. Roggio simply never draws a connection between the state foreclosure action, the present deficiency judgment claim, and a cognizable constitutional deprivation, other than to assert that he is entitled to an impartial forum. *Id.* at 10. Because his due process claim is a new allegation in an old allegation's clothing, it cannot support reconsideration.[3] Accordingly, I **DENY** Roggio's Motion for Reconsideration.

---

3   Roggio is, of course, free to pursue any of these claims on appeal to the Third Circuit, but his Rule 60 motion is an improper context in which to challenge them.

(10) Roggio's "Motion to Enforce the Court's Order." Roggio asks the Court to enforce its Order dated November 25, 2019, where I rejected his frivolous claim that FIRREA bars jurisdiction over the deficiency action. *See* ECF No. 17, at 5-6. On its face, this motion makes little sense, given that my Order *is* in force, and it awards Roggio no relief. Otherwise, the motion is plainly a reconsideration motion in disguise. Roggio again asks the Court to treat claims *against* a defunct bank (such as his) the same as claims *by* a defunct bank's successor in interest (such as Chase's), to find that Chase lacked standing in state court to prosecute the foreclosure, and to consider WaMu's alleged misdeeds. *See, e.g.*, ECF No. 62, at 7-10. Contrary to Roggio's insistence, and as I have stated many times over, FIRREA differentiates between his claims and Chase's, and the proper forum for challenging the jurisdiction of the state courts is the state courts. *See supra*. Accordingly, I **DENY** Roggio's Motion.

(11) Roggio's Recusal Motion. Roggio next seeks to recuse me from this case. *See* ECF No. 72. Although Roggio filed this motion without leave from the Magistrate Judge, I will address the merits at this time. Pursuant to 28 U.S.C. § 455(a), a judge shall disqualify herself "in any proceeding in which [her] impartiality might reasonably be questioned." *Id.* Such circumstances include, *inter alia*: personal bias, prejudice concerning a party, financial interest in the case, or a relationship with a party, lawyer, or witness. *Id.* § 455(b)(1)-(5). Ultimately, the test is "whether a reasonable person, with knowledge of all the facts, would conclude that the judge's impartiality might reasonably be questioned." *In re Kensington Int'l, Ltd.*, 368 F.3d 289, 301 (3d Cir. 2004).

(12) After careful scrutiny, Roggio's motion fails to state a basis for recusal. As is true of every twist and turn in this litigation, Roggio stridently disagrees with my legal conclusions and believes them to be erroneous. *See, e.g.*, ECF No. 71, at 3 (alleging "refusal to address multiple material breaches by Chase"); *id.* at 4 (alleging "rejection without explanation of the authority of the UCC"); *id.* at 9 ("The conduct of WaMu . . . satisfies all of the essential elements of the [NJCFA]."); *id.* at 11 (alleging "refusal to acknowledge, for two years, the terms of the contract at the center of this dispute"); *id.* at 19 ("Chase's repudiation of the FIRREA statute . . . violates authorities that govern this Court."); *id.* at 20 ("[R]efusal to accept or reject the Magistrate Judge's Report and Recommendation Denied [ ] Due Process and requires recusal because only an Article III judge has jurisdiction over a 60(b)(4) motion."). Such allegations are insufficient to warrant recusal. *See United States v. Eisenberg*, 773 F. Supp. 662, 734 (D.N.J. 1991) ("[T]he basis for recusal must arise from the incidents or activities outside of the judges' [ ] role."); *see also Johnson v. Trueblood*, 629 F.2d 287, 291 (3d Cir. 1980) (explaining that there must be "extrajudicial bias," or "bias that is not derived from the evidence or conduct of the parties that the judge observes in the course of the proceedings"). To the extent that Roggio continues to disagree with this Court's decisions, he may appeal in the normal course.

(13) <u>Roggio's Motion for Leave to Amend</u>. Finally, Roggio seeks leave to amend his summary judgment motion. *See* ECF No. 79. It is unclear why Roggio seeks to do so, other than to simply reiterate his initial submission (which itself repeats the same arguments I have rejected *ad nauseum*). *See* ECF No. 51. Roggio even admits that "some of the content may appear redundant." *Id.* at 2. As discussed *supra*, I rejected

Roggio's initial motion for summary judgment because "this case is still in the early stages of litigation," during which time courts "often deny [such] motions . . . as premature." *See* ECF No. 52. I reach the same result today, as discovery is ongoing. *See* ECF No. 76 (directing parties to respond to initial written discovery requests by April 30, 2021). Accordingly, Roggio's Motion for Leave to Amend his Motion for Summary Judgment is **DENIED**.

**IT IS** on this 12th day of May, 2021,

**ORDERED** that Roggio's motions are **DENIED**. Roggio is again instructed that he must obtain the Magistrate Judge's permission before filing any further motions in this matter, and in the future, this Court will not consider the merits of any motion he submits in violation of that Order. Roggio is also well-advised that failure to do so, and/or repeated efforts to rehash baseless and defeated arguments, may result in sanctions. *See, e.g.*, *Talley v. City of Atl. City*, 2007 WL 2021792, at *4 (D.N.J. July 10, 2007) ("[T]here comes a point when repeated efforts to revive a hopeless [claim], after repeated rejections painstakingly explained by the court, must be understood and accepted by any reasonable person, because when a layman persists in a hopeless cause long after it should have been clear to him, as a reasonable (though not law-trained) person, that his cause was indeed hopeless sanctions should be imposed.").

/s/ Freda L. Wolfson
Hon. Freda L. Wolfson
U.S. Chief District Judge