**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JP MORGAN CHASE BANK, NATIONAL ASSOCIATION, <br><br>      Plaintiff, <br><br>      v. <br><br> VINCENT ROGGIO, <br><br>      Defendants. | Civ. A. No. 3:19-cv-06330 (GC) (TJB) <br><br> **OPINION** |

**CASTNER, District Judge**

 **THIS MATTER** comes before the Court following JP Morgan Chase Bank, National Association's ("Plaintiff") Motion for Summary Judgment under Federal Rule of Civil Procedure 56 for a deficiency judgment stemming from Vincent Roggio ("Defendant"), appearing *pro se*, defaulting on a residential mortgage. The Court reaches its decision without oral argument pursuant to Federal Rule of Civil Procedure ("Rule") 78 and Local Civil Rule 78.1.  For the reasons set forth below, the Court GRANTS IN PART and DENIES IN PART Plaintiff's Motion for Summary Judgment (ECF No. 107) and Defendant's Second Motion for Summary Judgment (ECF No. 106) and Motion to Amend the Second Motion for Summary Judgment (ECF No. 108) are DENIED.[1]

---

[1] Defendant filed his First Motion for Summary Judgment on September 4, 2020.  (*See* Def's First Mot. For Summ. J., ECF No. 51.)  The Motion was denied without prejudice on September 11, 2020.  (Text Order, ECF No. 52.)

I.      BACKGROUND

A.      Factual Background

In April 2005, Defendant executed a $3.3 million loan from Washington Mutual Bank ("WaMu") and pledged his real property, situated at 140 Rumson Road, Rumson, New Jersey 07760, (hereinafter, the "Property") as collateral.  (Compl. ¶ 9, ECF No. 1; Pl's Statement of Material Facts Not in Dispute ("Pl.'s Undisputed Facts") ¶ 1, ECF No. 107-33.)   In February 2006, Defendant failed to make his monthly payment and therefore defaulted on the loan.  (Pl.'s Undisputed Facts ¶ 3; *See* Decl. of Brian P. Scibetta in Supp. of Pl.'s Mot. for Summ. J. ("Scibetta Decl.") Ex. 5, ECF No. 107-6.)  A foreclosure action (hereinafter the "Foreclosure Action") was commenced by WaMu in June of 2006 in the Superior Court of New Jersey, Chancery Division. (*Id.*)  A final judgment was entered in the same court in 2018, which declared that Defendant owed $6,169,701.07 plus interest and costs that were taxed in the Foreclosure Action.  (Pl.'s Undisputed Facts ¶ 6; *See* Final J., Scibetta Decl. Ex. 6, ECF No. 107-7.)

In September 2008, WaMu became insolvent and the Federal Deposit Insurance Company ("FDIC"), as receiver for WaMu, assumed all rights, titles, powers, privileges, and operations of WaMu.  During this time, Plaintiff purchased certain WaMu assets and liabilities, and became the owner and servicer of all mortgage loans owned by WaMu.  (Pl.'s Undisputed Facts ¶¶ 8, 9; *See* Purchase and Assumption Agreement, Pl.'s Mot. for Summ. J. Ex. K, ECF No. 107-32.)  Plaintiff then became the plaintiff in the Foreclosure Action that WaMu commenced against Defendant.

The Superior Court of New Jersey entered a final judgment in Plaintiff's favor on February 26, 2018. (Pl.'s Undisputed Facts ¶ 6; *See* Final J., Scibetta Decl. Ex. 6.)  Pursuant to the Foreclosure Action, Plaintiff took the Property to a Monmouth County Sheriff Sale in November of 2018 and successfully purchased the home with a $1,000 bid.  (Pl.'s Undisputed Facts ¶¶ 10,

2

11; *See* Order, Scibetta Decl. Ex. 8; *see* Foreclosure Report, Scibetta Decl. Ex. 9.)  The Sheriff's Report calculated the deficiency to be $6,327,508.50 and the deed to the home was then transferred to Plaintiff after the Superior Court of New Jersey approved and confirmed the sale on December 21, 2018.  (Pl.'s Undisputed Facts ¶ 12; Order, Scibetta Decl. Ex. 8.)

Plaintiff timely filed this suit for a deficiency action on February 20, 2019.  (*See generally* Compl.)  As of January 31, 2022, the total outstanding debt on Defendant's loan was $7,687,491.99.  (Pl.'s Undisputed Facts ¶ 15; Aff. of Dorothy Washington, Ex. H, ECF No. 107-29.)

### B.    Procedural History

On February 10, 2022, Plaintiff filed the instant motion seeking Summary Judgment for its deficiency claim.  (*See* Pl.'s Mot. For Summ. J., ECF No. 107.)  Defendant filed his Opposition to Plaintiff's Statement of Material Facts Not in Dispute on February 23, 2022, which the Court construes as Defendant's opposition to Plaintiff's Motion for Summary Judgment.  (*See* Def.'s Opp'n to Pl.'s Statement of Material Facts, ECF No. 110.)  Plaintiff filed its Reply to Opposition on February 28, 2022. (Pl's Reply, ECF No. 111.) Defendant filed a Second Motion for Summary Judgment (*see* Def.'s Second Mot. For Summ. J., ECF No. 106) on February 3, 2022, and a Motion to Amend his Motion for Summary Judgment (*see* Def.'s Mot. to Am. Second Mot. For Summ. J., ECF No. 108) on February 10, 2022.  Plaintiff filed its Opposition to Defendant's Second Motion for Summary Judgment on February 22, 2022.  (*See* Pl.'s Opp'n to Def.'s Second Mot. for Summ. J., ECF No. 109.)

Fact discovery concluded on August 30, 2021.  (Text Order, ECF No. 92.)  During discovery, both sides had the opportunity to exchange their respective fair market valuations of the Property.  (Aff. Of James Meehan in Supp. Of Pl.'s Mot. for Summ. J. ("Meehan Aff."), ECF

3

No. 107-16.)  Plaintiff relies on its expert, James Meehan ("Meehan"), who valued the Property at the time of foreclosure in November 2018 at $2,150,000.  (Real Estate Appraisal of Single-Family Dwelling ("Appraisal"), Meehan Aff. Ex. 3, ECF No. 107-19.)  Meehan arrived at this valuation after he personally inspected the Property, evaluated the sale history of the Property and similar properties in Rumson, New Jersey, and used general market knowledge based on fifteen (15) years of experience appraising properties.  (*Id.*)

Defendant did not submit any expert valuation or report, but instead relies on an appraisal report by Walker Matlack ("Matlack") of then Wachovia Bank from December 2004, listing the fair market value of the Property in 2004 at $5.5 million.  (*See* Dec. 5, 2004 Appraisal (the "Wachovia Report"), Meehan Aff. Ex. 4, ECF No. 107-20.)  Defendant has not identified that he plans to call Matlack as an expert or fact witness.  Defendant also notified the Court that while he intends to rely upon the Wachovia Report, he believes "the report speaks for itself" and "will not be seeking expert testimony."  (*See* Def.'s Dec. 17, 2021 Letter to Hon. Tonianne J. Bongiovanni, U.S.M.J. ("Def's Dec. 17, 2021 Letter"), Scibetta Decl. Ex. 14, ECF No. 107-15.)

Plaintiff argues that they have met the elements for a deficiency judgment and that Defendant has not challenged any of the essential elements: a Foreclosure Judgment was entered; they brought the deficiency action within ninety (90) days of the Foreclosure Judgment; the property was neither redeemed nor was the debt paid off; and the amount owed by the Defendant exceeds the fair market value of the property.  Chase also seeks to strike Defendant's answer and affirmative defenses for various reasons discussed below.

## II.   LEGAL STANDARD

"[A]lthough pro se pleadings and filings must be 'construed liberally,' the same summary judgment standard applies to pro se litigants." *Dinnerstein v. Burlington Cnty. Coll.*, No. 13-5598,

2017 WL 5593776, at *4 (D.N.J. Nov. 21, 2017), *aff'd*, 764 F. App'x 214 (3d Cir. 2019).  Summary judgment shall be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A dispute is "genuine" if it could lead a "reasonable jury [to] return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Id.*  When deciding the existence of a genuine dispute of material fact, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Id.* at 251–52. In doing so, the Court must evaluate the record as a whole. *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 151 (2000). The Court is not entitled to weigh the evidence and draws all factual inferences in favor of the nonmoving party.  *Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 554 (1990)

Once the moving party asserts that no genuine dispute of a fact exists, the burden shifts to the non-moving party to present specific facts showing a genuine issue that needs to be resolved at trial.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "[R]ule 56 enables a party contending that there is no genuine dispute as to a specific, essential fact 'to demand at least one sworn averment of that fact before the lengthy process of litigation continues.'"  *Schoch v. First Fidelity Bancorp.,* 912 F.2d 654, 657 (3d Cir. 1990) (*quoting Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990).

The Court must grant summary judgment if any party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex*, 477 U.S. at 322.  "[I]nferences, doubts, and issues of

credibility should be resolved against the moving party." *Meyer v. Riegel Prods. Corp.*, 720 F.2d 303, 307 n.2 (3d Cir. 1983). Finally, "a party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). However, the nonmoving party is not required to "produce evidence in a form that would be admissible at trial in order to avoid summary judgment." *Celotex*, 477 U.S. at 324.

## III.   DISCUSSION

To start, the Court finds that Defendant failed to properly follow Local Civil Rule 56.1.

Local Rule 56.1 states:

> The opponent of summary judgment shall furnish, with its opposition papers, a responsive statement of material facts, addressing each paragraph of the movant's statement, indicating agreement or disagreement and, if not agreed, stating each material fact in dispute and citing to the affidavits and other documents submitted in connection with the motion; any material fact not disputed shall be deemed undisputed for purposes of the summary judgment motion.

*Stagno v. Nelson*, No. CV131552, 2014 WL 12601052, at *1 (D.N.J. Feb. 26, 2014) (citing L. Civ. R. 56.1(a)). Furthermore, at the summary judgment stage, a district court considers the facts drawn from materials in the record, "including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). If a party fails to follow Rule 56(c), the Court may "(1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it; or (4) issue any other appropriate order." *Dawidoicz v. Rutgers Univ.*, No. CV183285, 2022 WL 17094833, at *3 (D.N.J. Nov. 21, 2022) (citing Fed. R. Civ. P. 56(e)).

Here, Defendant did not properly respond to Plaintiff's Statement of Material Facts by addressing each paragraph of Plaintiff's Statement. (*See* Def.'s Opp'n to Pl.'s Statement of Material Facts, ECF No. 110.)  Instead, Defendant provides piecemeal objections to Plaintiff's Statement of Uncontested Material Facts in the body of his Brief.  (*See generally id.*)  However, Defendant's objections relate to findings already made in the state Foreclosure Action.  (See *infra*, Discussion, for a comprehensive analysis on why the Court is not able to relitigate findings from earlier proceedings in state court.)  Defendant's Opposition does not dispute any of the uncontested facts that Plaintiff asserts which give rise to a *prima facie* case for a deficiency judgment.  (*See* Def.'s Opp'n to Pl.'s Statement of Material Facts).[2]  The only contested fact found in the briefing is the fair market value of the Property where Plaintiff provides their own valuation as well as Defendant's proposed valuation.  (Pl.'s Undisputed Facts ¶ 14; Dec. 5, 2004 Appraisal (the "Wachovia Report"), Aff. of James Meehan in Supp. of Pl.'s Mot. for Summ. J. ("Meehan Aff.") Ex. 4, ECF No. 107-20.)  The Court, however, is permitted to evaluate the record as a whole when deciding whether a genuine dispute of a material fact exists.  *Reeves*, 530 U.S. at 151 (2000).

### A.    No Genuine Dispute of Material Fact Exists Under N.J. Stat. Ann. § 2A:50-2

The manner in which a party may pursue a deficiency action in foreclosure proceedings is properly detailed in N.J. Stat. Ann. § 2A:50-2.  To do so, Plaintiff must show the following elements: (1) foreclosure of a mortgage occurred; (2) at the sale in the foreclosure proceeding, the sale did not bring in an amount sufficient to satisfy the debt, interest, and costs; (3) the Defendant

---

[2] The Court also notes that Defendant filed his own Statement of Material Facts with his Second Motion for Summary Judgment, but this Statement also does not assert any relevant facts regarding the elements for a deficiency claim.  (See Def.'s Second Mot. For Summ. J., ECF No. 106.)

did not redeem the property or pay off the mortgage prior to the sale;[3] and (4) the deficiency action is commenced within three months from the date of the sale, or within ninety (90) days of the confirmation of the sale. *W. Pleasant-CPGT, Inc. v. U.S. Home Corp.*, 243 N.J. 92, 106, (2020). After a party files a deficiency action, then both sides can submit evidence to the Court on the "fair market value of the mortgaged premises at the time of the sale thereof in the foreclosure action, and the court, with or without a jury, shall determine the amount of such deficiency, by deducting from the debt secured the amount determined as the fair market value of the premises."[4]  N.J. Stat. Ann. § 2A:50-3.

Plaintiff argues that it has demonstrated the elements to prevail on a deficiency judgment, and that Defendant has not challenged any of the essential elements: a Foreclosure Judgment was entered (*See* Final J., Scibetta Decl. Ex. 6); Plaintiff brought the deficiency action within ninety (90) days of the Foreclosure Judgment (*See generally* Compl.); the property was neither redeemed nor was the debt paid off; and the amount owed by the Defendant exceeds the fair market value of the property.[5]

---

[3] The Court notes that in its prior Order, Defendant's right to redeem the Property was found to be terminated under N.J. Stat. Ann.§ 2A:50-5. (*See* Memorandum Order, ECF No. 129.)

[4]  The statute further provides that "[i]f all parties to the action shall so agree, the court may accept as the fair market value of the mortgaged premises the value fixed by three appraisers, to be named by agreement of all the parties to the action, which agreement shall be evidenced by a stipulation to be filed in the action."  N.J. Stat. Ann. § 2A:50-3.

[5] The Court notes that the amount owed by Defendant exceeds the fair market value of property regardless of whether the Court accepts either Plaintiff's or Defendant's fair market valuation. (*See* Wachovia Report, Meehan Aff. Ex. 4; Appraisal, Meehan Aff. Ex. 3.) As stated, Plaintiff asserts that the fair market value of the Property is $2,150,000, while Defendant claims the fair market value is $5,500,000.  The Foreclosure Judgment totals $6,169,701.07 plus interest and costs, which is a greater sum than both Plaintiff and Defendant's proposed valuation of the Property.

Here, Plaintiff satisfied all the elements under N.J. Stat. Ann. § 2A:50-2.  First, a final judgment of foreclosure on the Property occurred on November 30, 2017.  (*See* Final J., Scibetta Decl. Ex. 6.)  The final judgment was recorded to be $6,169,701.07 plus lawful interest and costs, from November 30, 2017 (date of the final judgement) to November 19, 2018 (the date the Property was sold).  (*Id.*)  Second, the Property was sold on November 19, 2018, for $1,000, which was less than the amount sufficient to satisfy the debt, interests, and costs arising from the Property.  (*See* Order, Scibetta Decl. Ex. 8, ECF No. 107-9; *see* Foreclosure Report, Scibetta Decl. Ex. 9, ECF No. 107-10.)  Specifically, at the time the house was sold, the Monmouth County Sheriff calculated the deficiency at $6,327508.50.  (*See id.*)  Third, Defendant has made no assertion and advanced no evidence of any efforts to redeem the Property or to pay off the debt.  (*See generally* to Def.'s Opp'n of Material Facts.)  Fourth, this deficiency action was commenced within three months of the date the Property was sold, or within ninety (90) days of the confirmation of the sale.  The property was sold on November 19, 2018 and confirmed by court Order on December 21, 2018.  (*Id.*)  This action was filed on February 20, 2019.  (*See generally* Compl.) Therefore, Plaintiff has made a sufficient evidentiary showing to satisfy the elements of N.J. Stat. Ann. § 2A:50-2.

It does not appear that Defendant disputes or attacks any of these essential elements.  Nowhere in Defendant's briefing or Statement of Material Facts does he challenge that the Property was foreclosed on November 30, 2017. (*See generally* Def.'s First Am. Answer & Affirmative Defenses ("Am. Answer & Affirmative Defenses"), ECF No. 29; Def.'s Opp'n to Pl.'s Statement of Material Facts.) Furthermore, Defendant does not dispute that the house was sold for $1,000 on November 19, 2018, which was less than the amount to satisfy the debt, interests, and costs from the Property.  (*Id.*)  Third, Defendant did not redeem the Property or pay off the debt prior to the

sale.  (*Id.*)  Fourth, Defendant does not dispute that this action was timely filed on February 20, 2019. (*Id.*) As a result, Defendant fails to challenge the essential elements under N.J. Stat. Ann. § 2A:50-2, and summary judgment is proper as to Plaintiff's deficiency claim.

### B.  A Genuine Dispute of Material Facts Exist Under N.J. Stat. Ann. § 2A:50-3

The second part of the Court's inquiry is determining whether there is a dispute of material fact that would prevent the Court from granting summary judgment under N.J. Stat. Ann. § 2A:50-3 as to the amount of the deficiency.  As mentioned above, N.J. Stat. Ann. § 2A:50-3 permits both parties to submit evidence regarding what they believe the fair market value of the Property was at the time of the sale.  "Plaintiff [i]s entitled only to recover the amount of its loan—together with accruing interest and other damages permitted by the loan agreements—and defendants [a]re entitled to a fair market credit for any property acquired by plaintiff in the collection of its debt." *Brunswick Bank & Tr. V. Affiliated Bldg. Corp.*, 440 N.J. Super. 118, 125 (App. Div. 2015).

Plaintiff submits an expert report by Meehan, which values the Property at $2,150,000 (Appraisal, Meehan Aff. Ex. 3.) Based on this value, Plaintiff asserts that they are owed $7,687,491.99 (total outstanding debt) as of January 31, 2022, plus accrued interest minus the fair market value of the Property worth $2,150,000 as of November 19, 2018.  (*See* Pl.'s Mot. For Summ. J. 2; *see also* Pl.'s Undisputed Facts ¶ 15.)  Therefore, Plaintiff seeks a deficiency judgment against Defendant for $5,537,491.99 plus interest from February 1, 2022, through the date of the order granting summary judgement.  (*Id.*)  Meehan has a master's in business administration with a concentration in Real Estate and has been appraising New Jersey real estate for nearly 15 years. (Qualifications of Appraiser & License, Meehan Aff. Ex. 1.)  He provides a detailed expert report as to how he arrived at a fair market value of $2,150,000 for the Property.  (Appraisal, Meehan Aff. Ex. 3.)  Specifically, Meehan personally visited the property, assessed the demographics and

housing market in the surrounding Rumson area, compared the Property to similarly situated properties in Rumson that had been recently sold, and used his general knowledge of the New Jersey real estate market.  (*Id.*)

Defendant claims the Property is valued at $5,500,000 based on a 2004 appraisal report by Matlack from then Wachovia Bank.  (*See* Wachovia Report, Meehan Aff. Ex. 4.)  Defendant has not identified that he plans to call Matlack as an expert or fact witness, and Defendant wrote a letter to the Court stating that he will not use an expert witness because the Wachovia Report "speaks for itself."  (*See* Def's Dec. 17, 2021 Letter, Scibetta Decl. Ex. 14.)  The Court also highlights that Defendant does not purport to be an expert appraiser or licensed in the field.

Meehan asks the Court to disregard the Wachovia Report because it is outdated, consumer patterns have changed away from preferring larger homes due to costs of upkeep and energy, and accepting the Wachovia Report requires the Court to assume the condition of the property has not changed in 14 years.  (Meehan Aff.)  However, these are all factual issues that present a dispute as to the strength of Defendant's fair market valuation.  As noted above, the Court is not permitted to weigh the evidence at the summary judgment phase.  *Lytle*, 494 U.S. at 554.

Rule 56(c)(1)(B) states: "a party asserting that a fact cannot be or is genuinely disputed must support the assertion by … showing … that an adverse party cannot produce admissible evidence to support the fact."  Plaintiff asserts that Defendant's sole potential piece of evidence, the 2004 appraisal, may not be admissible as it could run afoul of Federal Rule of Evidence ("FRE") 801(c).  FRE 801(c) proscribes hearsay from being admitted into evidence, which is defined as an out of court statement being offered for the truth of the matter asserted.  Fed. R. Evid. 801(c)(2).  The Court notes that the statements contained within the Wachovia Report do pose a potential hearsay issue.

Based on the Court's review of the entire record, a genuine dispute as to the actual fair market value of the Property in 2018 exists.  Specifically, Natalia Shmidt ("Shmidt") of Alta Appraisal, LLC was hired by Plaintiff to perform an independent exterior-only appraisal on the Property. (Shmidt Appraisal, Aff. Of Dorothy Washington, Ex. G, ECF No. 107-28.) In July 2018, Shmidt valued the Property at $2.6 million, or $450,000 more than Meehan valued the Property. The disparity in valuations shows that a genuine dispute exists as to the fair market value of the Property; and therefore, summary judgment is not appropriate on the fair market value issue.

Rule 56(e)(1) and (4) provide that if "a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . give an opportunity to properly support or address the fact; . . . or . . . issue any other appropriate order."  When evaluating the record as whole, the Court finds that there is a genuine dispute as to the fair market value of the Property; and therefore, will not grant summary judgement on the exact amount of the deficiency.  The Court finds that an evidentiary hearing on the fair market value of the Property is warranted.

### C. The Court Strikes all Defendant's Affirmative Defenses

Plaintiff moves to strike all of Defendant's affirmative defenses under Rule 12(f).  Fed. R. Civ. P. 12(f). Defendant's affirmative defenses are as follows (Am. Answer & Affirmative Defenses):

<u>First Affirmative Defense</u>

Personal Service of the Summons and complaint required for *In Personam* Jurisdiction was never achieved by Chase in the state foreclosure.

<u>Second Affirmative Defense</u>

Chase's claim before the New Chancery Court on February 16, 2018 that foreclosure complaints were not subject to the FIRREA Statutes were false.

<u>Third Affirmative Defense</u>

Chase's statements to the New Jersey Chancery Court that New Jersey State Rule 4:34-3 allowed Chase to transfer interest from the FDIC without notice, service, and a motion is unsupported by law.

<u>Fourth Affirmative Defense</u>

Chase's claim that it could act as the plaintiff in the state case after September 25, 2008 is unsupported by any authority and knowingly violates the mandatory and exclusive FIRREA Statute and the Purchase and Assumption Agreement between Chase and the Federal Deposit Issuance Corporation (FDIC).

<u>Fifth Affirmative Defense</u>

Chase was judicially estopped from playing fast and loose with the Court by assuming a position in a legal proceeding before the state court which was inconsistent with the position asserted in this Court.

Sixth Affirmative Defense

This Complaint is barred by the terms of the contract between WaMu and Roggio.

Seventh Affirmative Defense

The Complaint is barred by the Statute of Frauds.

Generally, Courts disfavor motions to strike as they can delay litigation. *See Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989); *see also F. D. I. C. v. Modular Homes*, Inc., 859 F. Supp. 117, 120 (D.N.J. 1994). However, when used to "remove unnecessary clutter," striking affirmative defenses can expedite litigation. *Heller Fin., Inc.*, 883 F.2d at 1295. Affirmative defenses are subject to the general pleading requirements under the Federal Rules of Civil Procedure. *F. D. I. C.*, 859 F. Supp. at 120. Defenses that are mere conclusions should be stricken. *See id.* at 121 (citing *Heller Fin., Inc.*, 883 F.2d at 1295.) "The purpose of requiring the defendant to plead available affirmative defenses in his answer is to avoid surprise and undue prejudice by providing the plaintiff with notice and the opportunity to demonstrate why the affirmative defense should not succeed." *Robinson v. Johnson*, 313 F.3d 128, 134–35 (3d Cir. 2002). As a result, the Court must strike defenses that are so vague because they do not provide Plaintiff with adequate notice of the defense being asserted. *See Small v. Warren*, No. 15-8886, 2018 WL 6322438, at *2 (D.N.J. Dec. 4, 2018). For the reasons set forth below, the Court finds that all seven affirmative defenses should be stricken.

The Court strikes the first affirmative defense as the Court refuses to review the state court's judgment. Defendant claims the state court judgment against him was improper because personal service was not proper. The *Rooker-Feldman Doctrine* applies to cases brought by unsuccessful state court parties "complaining of injuries caused by state-court judgments rendered before the federal district court proceedings commenced and inviting district court review and

14

rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005) (referencing *Rooker v. Fidelity Trust Co.,* 263 U.S. 413 (1923); *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462 (1983)).  For the Doctrine to apply, "(1) 'the highest state court in which review is available has affirmed the judgment below and nothing is left to be resolved'; (2) 'the state action has reached a point where neither party seeks further action'; (3) or 'a state proceeding has 'finally resolved all the federal questions in the litigation.'" *Farzan v. J.P. Morgan Chase Bank, N.A.*, No. 19-3925, 2022 WL 17336211, at *1 (3d Cir. Nov. 30, 2022) (quoting *Malhan v. Sec'y U.S. Dep't of State*, 938 F.3d 453, 459 (3d Cir. 2019) (citation omitted).  Under the *Rooker-Feldman Doctrine*, if the state court decision was wrong, the judgment is not void. Instead, the judgment is left open to reversal or modification via an appellate proceeding in the proper court. *See generally Rooker*, 263 U.S. 413; *see also Feldman*, 460 U.S. 462.

Here, Defendant appealed the state Foreclosure Action several times and certification was eventually denied by the New Jersey Supreme Court.  *See Roggio v. JPMorgan Chase Bank, N.A.*, No. A-4199-18, 2021 WL 4824069, at *3 (N.J. Super. Ct. App. Div. Oct. 18, 2021), *cert. denie*d, 277 A.3d 467 (2022); *Washington Mut. Bank v. Roggio*, No. A-3170-10T4, 2012 WL 3600071, at *1 (N.J. Super. Ct. App. Div. Aug. 23, 2012), *cert denied*, 88 A.3d 191 (2014).  Therefore, under *Farzan* and *Malhan*, "'the highest state court in which review is available has affirmed the judgment below and nothing is left to be resolved,'" and as a result, the *Rooker- Feldman Doctrine* applies in this case.  *Farzan*, 2022 WL 17336211 at *1; *Malhan*, 938 F.3d at 459.  It appears Defendant has exhausted his appeal rights from the state Foreclosure Action. Therefore, it is not proper for this Court to revisit or relitigate these issues.

The Court also strikes the first affirmative defense due to *res judicata* or claim preclusion arising from the state court judgment.  When applying *res judicata* in this case, we must apply

New Jersey law. *McCarter v. Mitcham*, 883 F.2d 196, 201 (3d Cir. 1989). *Res judicata* "contemplates that when a controversy between parties is once fairly litigated and determined it is no longer open to relitigation." *Adelman v. BSI Fin. Servs., Inc.*, 179 A.3d 431, 436 (App. Div. 2018) (quoting *Lubliner v. Bd. of Alcoholic Beverage Control,* 165 A.2d 163, 167 (1960)). *Res judicata* applies when: "(1) the issue to be precluded is identical to the issue decided in the prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the court in the prior proceeding issued a final judgment on the merits; (4) the determination of the issue was essential to the prior judgment; and (5) the party against whom the doctrine is asserted was a party to or in privity with a party to the earlier proceeding." *Allen v. V & A Bros.*, 26 A.3d 430, 444 (2011).

Here, elements are satisfied to apply *res judicata*. The personal jurisdiction issue was already litigated and decided by the state court. The state foreclosure action is a valid and final judgement made on the merits. (*See* Final J., Scibetta Decl. Ex. 6) The determination of personal jurisdiction was essential to the state action because without personal jurisdiction the state court could have not heard the case. Finally, Defendant was also the defendant in the state court proceedings. Therefore, *res judicata* applies.

Defendant's second affirmative defense is that Plaintiff's alleged statements to the New Jersey Chancery Court suggesting foreclosure actions are not subject to the Financial Institutions Reform and Recovery Enforcement Act ("FIRREA") are false. The Court has already ruled in earlier filings that FIRREA's exhaustion and venue provisions do not apply to this suit and that FIRREA does not apply to claims against borrowers, but applies to claims by borrowers against entities in FDIC receivership. (*See* Letter Order Den. Def's Mot. to Dismiss, ECF No. 17; Order Den. Def.'s Mot. for Recon., ECF No. 32; Memo. Order Den. Mot. for Recons., ECF No. 80.) As a result, Defendant's second affirmative defense is stricken.

Defendant's third affirmative defense claims that Plaintiff told the New Jersey Chancery Court that they could transfer their interest from the FDIC without notice, service, or a motion. The Court finds this affirmative defense to be irrelevant as applied to Plaintiff's deficiency claim. Additionally, as mentioned above, the Defendant has exhausted his appeal rights at the state court. This court does not have appellate jurisdiction over the state court action. Therefore, the Court strikes Defendant's third affirmative defense.

The Court strikes Defendant's fourth affirmative defense. Defendant's fourth affirmative defense asserts that Plaintiff should not have been allowed to succeed WaMu as a plaintiff in the state foreclosure proceeding. The Court has already explained above why this forum is improper for challenging a decision that has already been litigated and decided by a state court. As stated above, Defendant is free to challenge the state court's decision in the proper state appellate court but not in this Court.[6]  To add, various courts have already found that Plaintiff assumed WaMu's assets, including Defendant's loan, after WaMu entered a receivership with the FDIC on September 25, 2008. *Roggio*, No. A-4199-18, 2021 N.J. Super. Unpub. LEXIS 2502, at *2; *see also Berg v. JPMorgan Chase, Nat'l Ass'n*, No. 14-04298, 2015 U.S. Dist. LEXIS 25754, at *2 (E.D. Pa. Mar. 2, 2015).  This is not a legitimate dispute as Defendant took out a loan with WaMu and the loan remained with WaMu when Plaintiff assumed WaMu's assets and liabilities on September 25, 2008.  (*See* Purchase and Assumption Agreement, Pl.'s Mot. for Summ. J. Ex. K.) Therefore, the Court strikes Defendant's fourth affirmative defense.

---

[6] New Jersey state courts have also found that "possession of the note or an assignment of the mortgage that predated the original complaint confer[s] standing." *Deutsche Bank Tr. Co. Americas v. Angeles*, 53 A.3d 673, 675 (App. Div. 2012); *see also Deutsche Bank National Trust Co. v. Mitchell*, 27 A.3d 1229 (App. Div. 2011).  Given that Plaintiff was in possession of the Note prior to filing this action, Plaintiff had standing to bring this action.

The Court strikes Defendant's fifth affirmative defense.  As mentioned above, "the purpose of requiring the defendant to plead available affirmative defenses in his answer is to avoid surprise and undue prejudice by providing the plaintiff with notice and the opportunity to demonstrate why the affirmative defense should not succeed." *Robinson*, 313 F.3d at 134–35.  As a result, the Court must strike defenses that are so vague that they do not provide adequate notice to Plaintiff.  *See Small*, 2018 WL 6322438, at *2.  Defendant asserts that Plaintiff was "judicially estopped from playing fast and loose" for taking a position that was inconsistent with a prior position in state court.  The Defendant provides no specifics as to Plaintiff's alleged inconsistent positions and more importantly, this issue once again relates to the state court judgment.  Without more, the Court must strike this affirmative defense as it does not provide Plaintiff with adequate notice as to the specific defense being asserted.

The Court strikes Defendant's sixth affirmative defense which asserts that this action is barred by the terms of a contract between WaMu and Defendant.  Defendant does not specify which contract he is referring to. Plaintiff points the Court towards a settlement agreement during the state Foreclosure Action.  (Pl.'s Mot. For Summ. J. 19.)   As the Court notes several times above, this is not the proper forum for relitigating issues decided during the state Foreclosure Action.

The Court strikes Defendant's seventh affirmative defense where he claims this action is barred by the statute of frauds.  In New Jersey, the statute of frauds provision states:

> Except as otherwise provided in this section a contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker. A writing is not insufficient because it omits or incorrectly states a term agreed upon but the contract is not enforceable under this paragraph beyond the quantity of goods shown in such writing.

18

N.J. Stat. Ann. § 12A:2-201.  The Defendant does not assert any facts or evidence to support what, if any, contract for the sale of goods he is referring to.  As it stands, it is merely a legal conclusion. As noted above, conclusory defenses should be stricken.  *See F.D.I.C.*, 859 F. Supp. at 120; *see also Heller Fin., Inc.*, 883 F.2d at 1295.  Therefore, the Court strikes Defendant's seventh affirmative defense.

> ### D.    Defendant's Second Motion for Summary Judgment and Amended Second Motion for Summary Judgment are Denied

Defendant also filed his Second Motion for Summary Judgment (*see* Def.'s Second Mot. For Summ. J.) on February 3, 2022, and a Motion to Amend his Motion for Summary Judgment (*see* Def.'s Mot. to Am. Second Mot. For Summ. J.) on February 10, 2022.  As mentioned above, to satisfy N.J. Stat. Ann. § 2A:50-2, Plaintiff must show: (1) foreclosure of a mortgage occurred; (2) at the sale in the foreclosure proceeding, the sale did not bring in an amount sufficient to satisfy the debt, interest, and costs; (3) the Defendant did not redeem the property or pay off the mortgage prior to the sale and (4) the deficiency action is commenced within three months from the date of the sale, or within ninety (90) days of the confirmation of the sale.  Throughout both motions, Defendant does not dispute any of the essential elements of a deficiency claim.

Instead of attacking the elements of a deficiency judgement, Defendant mainly asserts points that have already been litigated in the Foreclosure Action in state court.  In the Second Motion for Summary Judgement, Defendant asserts previously decided state court issues such as, but not limited to that Plaintiff was not a proper party to the lawsuit (Def.'s Second Mot. For Summ. J. 9) and the operative complaint was never filed (*id.* at 10).[7]  In the Amended Second

---

[7] Defendant's only points asserted in the Second Motion for Summary Judgment that are related to events that occurred in this Court are that Plaintiff never disputed Defendant's First Motion for Summary Judgement and the Court never decided the First Motion for Summary Judgment (Def's Second Mot. at 25, ECF No. 106), and Judge Wolfson's Rulings are in direct conflict with

Motion for Summary Judgment, Defendant only puts forth previously litigated issues from state court proceedings as to why summary judgment should be granted such as: the second amended complaint was never filed in state court (Def.'s Mot. to Am. Second Mot. For Summ. J. 1); Plaintiff did not receive their assignment to WaMu's assets until after the foreclosure was completed (*id.* at 5); and Plaintiff needed to file to be a party in state court (*id.* at 8). The crux of Defendant's arguments centered around why the Foreclosure Action was improperly entered and why Plaintiff did not have standing to be a part of the Foreclosure Action. The Court has already addressed in detail above why these arguments should be rejected.

**E.  CONCLUSION**

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART Plaintiff's Motion for Summary Judgment and Defendant's Second Motion for Summary Judgment and Amended Second Motion for Summary Judgment are DENIED. An appropriate Order follows.

**Dated**: January 30, 2023                                    *s/Georgette Castner*
                                                   **GEORGETTE CASTNER**
                                                   **United States District Judge**

---

the record (*id.* at 37).  Not only are these two assertions irrelevant to the Court's inquiry when evaluating whether a genuine dispute as to a material fact exists at the summary judgment stage, but these two points are false.  First, Judge Wolfson issued a Text Order on September 11, 2020 (Text Order, ECF No. 52) stating that Defendant's First Motion for Summary Judgement was "premature" because neither discovery had been conducted yet nor had a Rule 16 Conference taken place.  As a result, Judge Wolfson ruled: "Defendant's Motion is denied without prejudice."  (Text Order, ECF No. 52.)  Because the Motion was denied, Plaintiff had no responsibility to respond to the Motion. Regarding Defendant's assertion that Judge Wolfson's rulings are in direct conflict with the record, upon review of the record, the Court disagrees with Defendant's characterization as those rulings are well supported by the record in this case.